## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERRY WILKINSON AND KAY WILKINSON** ) | **COMPLAINT AND** | |
| ) | **DEMAND FOR JURY** | |
| *Plaintiffs,* ) | **TRIAL** | |
| ) | | |
| **v.** ) | | |
| ) | | |
| **AUXILIUM PHARMACEUTICALS, INC.** ) | | |
| ) | | |
| *Defendant.* ) | Case No. _____ | |
| ) | | |
| ) | | |
| ) | | |

## COMPLAINT

Plaintiffs, Jerry Wilkinson and Kay Wilkinson ("Plaintiffs"), by and through their undersigned counsel, Anapol Schwartz, by way of complaint against Auxilium Pharmaceuticals, Inc., (hereinafter "Defendant") alleges as follows upon information and belief:

## INTRODUCTION

1. This case involves the prescription drug Testim®, which is manufactured, sold, distributed, and promoted by Defendant, Auxilium Pharmaceuticals, Inc. (hereinafter "Auxilium" or "Defendant"), as a testosterone replacement therapy.

2. Auxilium misrepresented that Testim® is a safe and effective treatment for hypogonadism or "low testosterone" when, in fact, this drug causes serious medical problems, including life threatening cardiac events, strokes, and thrombolytic events.

3. Auxilium engaged in aggressive consumer and physician marketing and advertising campaigns for Testim®. Further, Defendant engaged in an aggressive "disease awareness"

1

campaign to alert men that they might be suffering from "Low T."

4.    Consumers of Testim® were misled as to the drug's safety and efficacy, and as a result have suffered injuries, including life-threatening cardiac events, strokes, and thrombolytic events.

## PARTIES

5.    Plaintiffs Jerry Wilkinson and Kay Wilkinson are and were at all times relevant hereto United States citizens and citizens of the State of Mississippi. Jerry Wilkinson suffered injury on or about September 26, 2011, due to his use of Testim®. Jerry Wilkinson was sixty-eight years of age at the time of his injury.

6.    Defendant, Auxilium Pharmaceuticals, Inc., is a Delaware corporation which has its principal place of business at 640 Lee Road, Chesterbrook, Pennsylvania 19087. Plaintiffs state that Auxilium conducted business and derived substantial revenue from sales of Testim® within the State of Mississippi.

7.    At all times relevant to this Complaint, Auxilium was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription testosterone replacement therapy drug sold under the name Testim® throughout the United States, including the State of Mississippi.

## JURISDICTION AND VENUE

8.    Subject matter of this action arises under 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.    This Court has personal jurisdiction of the Defendants because the Defendants have their principal place of business in Pennsylvania.

2

10.    Venue is proper in the U.S. District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims herein occurred within this district.

11.    The U.S. District Court for the Eastern District of Pennsylvania has personal jurisdiction over Auxilium because Auxilium transacts business in Pennsylvania.

## GENERAL ALLEGATIONS

12.    This action is for damages brought on behalf of the Plaintiff Jerry Wilkinson who was prescribed and supplied with, received and who has taken and applied the prescription drug Testim®, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendants.  This action seeks, among other relief, general and special damages and equitable relief in order to enable the Plaintiff to treat and monitor the dangerous, severe and life-threatening side effects caused by this drug.

13.    Defendants' wrongful acts, omissions, and fraudulent misrepresentations caused Plaintiff's injuries and damages.

14.    At all times herein mentioned, Auxilium was authorized to do business within Pennsylvania and Mississippi, the state of residence of Plaintiffs.

15.    At all times herein mentioned, the officers and directors of Auxilium participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which

resulted in the injuries suffered by Plaintiff herein.

16. Jerry Wilkinson used Defendant's product, Testim®, as directed beginning on or about July 8, 2011, until the date of his injury on or about September 26, 2011. This complaint is filed with the applicable statute of limitations period.

17. Plaintiff files this lawsuit within the applicable limitations period of first suspecting that said drugs caused the appreciable harm sustained by Plaintiff. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful case of Plaintiff's injuries at an earlier time because the injuries were caused without perceptible trauma or harm, and when the Plaintiff's injuries were discovered their cause was unknown to Plaintiff. Plaintiff did not suspect, nor did Plaintiff have reason to suspect, that Plaintiff had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiff was prevented from discovering this information sooner because Defendant herein misrepresented and continued to misrepresent to the public and to the medical profession that the drug Testim® is safe and free from serious side effects, and Defendant has fraudulently concealed facts and information that could have led Plaintiff to discover a potential cause of action.

## OVERVIEW

18. Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

19. Auxilium coordinated massive advertising campaigns designed to convince men that they suffered from low testosterone. Auxilium orchestrated national disease awareness media blitzes that purported to educate male consumers about the signs of low testosterone. The marketing

campaigns included online media and promotional literature placed in healthcare providers' offices and distributed to potential testosterone users.

20. The advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness—all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

21. Auxilium also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed and that conditions associated with normal aging could be caused by low testosterone levels.

22. While running disease awareness campaigns, Auxilium promotes its product, Testim®, as easy to use topical testosterone replacement therapies. Auxilium contrasts its products' at-home topical application with less convenient prescription testosterone injections, which require frequent doctor visits.

23. Auxilium convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Auxilium's promises of safety and ease. Although prescription testosterone replacement therapy had been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

24. What consumers received, however, were not safe drugs; instead, they received products which cause life threatening problems, including strokes and heart attacks.

25. Auxilium's marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that the

use of testosterone is safe for humans, even though Auxilium knew these to be false, and even though Auxilium had no reasonable grounds to believe them to be true.

26. There have been a number of studies concluding that testosterone therapy causes a sudden increase in hematocrit, hemoglobin and estradiol, and associating its use with increased the risk of heart attacks and strokes. Defendant, Auxilium, knew or in the exercise of reasonable care should have known that its product, Testim®, was defectively designed, unreasonable dangerous in normal use, and highly likely to cause injury or death, but it failed to provide adequate warnings about these known risks.

## FACTUAL ALLEGATIONS

27. The Food and Drug Administration approved Testim® on October 31, 2002, for the treatment of adult males who have low or no testosterone. After FDA approval, Testim® was widely advertised and marketed by Auxilium as a safe and effective testosterone replacement therapy.

28. Testim® is a hydro-alcoholic gel containing testosterone. Testim® is applied to the shoulders and upper arms. Testim® enters the body through transdermal absorption.

29. Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

30. The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

31. In men, testosterone levels normally begin a gradual decline after the age of thirty.

32. Testim® may produce undesirable side effects to patients who use the drugs, including but not limited to, myocardial infarction, stroke, and death.

33. In some patient populations, Testim® use may increase the incidence of myocardial

infarctions and death by over 500%.

34. In addition to the above, Testim® has been linked to several severe and life changing medical disorders in both users and those who come into physical contact with users or the unwashed clothes of someone who applied testosterone. Patients taking testosterone may experience enlarged prostates and increased serum prostate-specific antigen levels.

35. Auxilium's marketing strategy beginning in 2000 has been to aggressively market and sell its products by misleading potential users about the prevalence and symptoms of low testosterone and by failing to protect users from serious dangers that Auxilium knew or should have known to result from use of its products.

36. Auxilium's advertising programs sought to create the image and belief by consumers and their physicians that the use of testosterone was a safe method of alleviating their symptoms, had few side effects, and would not interfere with their daily lives, even though Auxilium knew or should have known these to be false, and even though the Defendant had no reasonable grounds to believe them to be true.

37. Auxilium purposefully downplayed, understated, and outright ignored the health hazards and risks associated with using testosterone. Auxilium deceived potential testosterone users by relaying positive information through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

38. As a result of Auxilium's advertising and marketing, and representations about its products, men in the United States pervasively seek out prescriptions for testosterone. If Plaintiff Jerry Wilkinson or his physicians had known the risks and dangers associated with testosterone replacement therapy, he would not have taken testosterone nor would have physician prescribed

it and consequently would not have been subject to its serious side effects.

39. Jerry Wilkinson was prescribed and used as directed Testim® for symptoms his doctor attributed to low testosterone as a result of Auxilium's advertisements, actions and inactions.

40. After taking daily doses of Testim® beginning on approximately July 8, 2011, Jerry Wilkinson suffered a TIA on or about September 26, 2011, as the result of his Testim use.

41. Prior to using Testim®, Jerry Wilkinson had no history of blood clots, diabetes, strokes, or significant cardiovascular problems.

42. Plaintiffs have and will sustain significant general and special damages, including medical expenses, lost wages, diminished economic horizons, loss of nurture guidance and support, loss of love, affection, and companionship, and other items of recoverable damages for which they seek maximum recovery as a matter of law.

43. Had Auxilium properly disclosed the risks associated with the use of its product Testim®, Plaintiff would have avoided the risk of cardiac injury by either not using testosterone replacement therapy at all, severely limiting the dosage and length of use, and/or by closely monitoring the degree to which the drugs were adversely affecting his health.

## FEDERAL REQUIREMENTS

44. Auxilium had an obligation to comply with the law in the manufacture, design, and sale of Testim®.

45. Upon information and belief, Auxilium violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*

46. With respect to the testosterone replacement drug Testim®, Auxilium, upon information and belief, has or may have failed to comply with all federal standards applicable to the sale of prescription drugs, including, but not limited to, one or more of the following violations:

8

a. The prescription drug Testim® is adulterated pursuant to 21 U.S.C. § 351 because, among other things, it fails to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing, storage or installation is not in conformity with federal requirements. See, 21 U.S.C. § 351.

b. The prescription drug Testim® is adulterated pursuant to 21 U.S.C. § 351 because, among other things, its strength differs from, or its quality or purity falls below, the standard set forth in the official compendium for Testim®, and such deviations are not plainly stated on its labels.

c. The prescription drug Testim® is misbranded pursuant to 21 U.S.C. §352 because, among other things, it's labeling is false or misleading.

d. The prescription drug Testim® is misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. §352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e. The prescription drug Testim® is misbranded pursuant to 21 U.S.C. §352 because the labeling does not (i) bear adequate directions for use, and/or (ii) bear adequate warnings against use where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f. The prescription drug Testim® is misbranded pursuant to 21 U.S.C. §352 because it's dangerous to health when used in the dosage, manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g. The prescription drug Testim® does not contain adequate directions for use pursuant to 21 CFR §201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of:

   1) statements of all conditions, purposes, or uses for which it is intended, including conditions, purposes, or uses for which it is prescribed, recommended or suggested in its oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drugs are commonly used;

   2) quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions;

   3) frequency of administration or application;

   4) duration or administration or application; and/or

     5)  route or method of administration or application.

h.  Auxilium violated 21 CFR §201.56 because the labeling was not informative and accurate.

i.  The prescription drug Testim® is misbranded pursuant to 21 CFR §201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j.  Auxilium violated 21 CFR §201.57 by failing to provide information that is important to the safe and effective use of the drug, including the potential of Testim to cause cardiovascular disease and the need for regular and consistent monitoring to ensure that a potentially fatal cardiac condition has not developed.

k.  Auxilium violated 21 CFR §201.57 because it failed to identify specific tests needed for selection or monitoring of patients who took the prescription drug Testim®.

l.  Auxilium violated 21 CFR §201.57 because the safety considerations regarding the prescription drug Testim® are such that the drug should be reserved for certain situations, and the Defendant failed to state such information.

m.  The prescription drug Testim® is mislabeled pursuant to 21 CFR §201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by it, and steps that should be taken if they occur.

n.  The prescription drug Testim® is mislabeled pursuant to 21 CFR §201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

o.  Auxilium violated 21 CFR §201.57 because the labeling failed to list the adverse reactions that occur with the prescription drug Testim® and other drugs in the same pharmacologically active and chemically related class.

p.  Auxilium violated 21 CFR §201.57 because the possibility that a patient could develop cardiovascular disease and other adverse reactions significantly more severe than the other reactions listed in the adverse reactions, and yet Auxilium failed to list the development of same before the other adverse reactions on the labeling of the prescription drug Testim®.

q.  The prescription drug Testim® is mislabeled pursuant to 21 CFR §201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

r.  The prescription drug Testim® violates 21 CFR §210.1 because the process by which it was manufactured, processed, and/or held fails to meet the minimum current good

manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that it meets the requirements as to safety and meets the quality and purity characteristics that it purports or is represented to possess.

s.  The prescription drug Testim® violates 21 CFR §210.122 because the labeling and packaging materials do not meet the appropriate specifications.

t.  The prescription drug Testim® violates 21 CFR §211.165 because the test methods employed by Auxilium are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

u.  The prescription drug Testim® violates 21 CFR §211.165 in that the prescription drug TESTIM® fails to meet established standards or specifications and any other relevant quality control criteria.

v.  The prescription drug Testim® violates 21 CFR §211.198 because the written procedures describing the handling of all written and oral complaints regarding the prescription drug Testim® were not followed.

w.  The prescription drug Testim® violates 21 CFR §310.303 in that the prescription drug Testim® is not safe and effective for its intended use.

x.  The Defendant violated 21 CFR §310.303 because Auxilium failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

y.  Auxilium violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with the prescription drug Testim® as soon as possible or at least within 15 days of the initial receipt by the Defendant of the adverse drugs experience.

z.  Auxilium violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with the prescription drug Testim®, and evaluating the cause of the adverse event.

aa. Auxilium violated 21 CFR §§310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

bb. Auxilium violated 21 CFR §§310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

cc. Auxilium violated 21 CFR §§310.305 and 314.80 by failing to identify the reports it submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report follow-up."

dd. Auxilium violated 21 CFR §312.32 because it failed to review all information relevant to the safety of the prescription drug Testim® or otherwise received by the Defendant from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ee. Auxilium violated 21 CFR §314.80 by failing to provide periodic reports to the FDA containing

1) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval,

2) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report, and/or

3) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ff. Auxilium violated 21 CFR §314.80 by failing to submit a copy of the published article from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

47. Defendant failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as Jerry Wilkinson, making Auxilium liable under Mississippi law.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### STRICT LIABILITY – MANUFACTURING DEFECT

48. Plaintiffs repeat, reiterate, and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

49. At all times material to this action, Defendant was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling,

and/or selling Testim®.

50. At all times material to this action, Testim® was expected to reach, and did reach, consumers in Pennsylvania, Mississippi and throughout the United States, including Jerry Wilkinson, without substantial change in the condition in which it was sold.

51. At all times material to this action, Testim® was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Auxilium in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

   a. When placed in the stream of commerce, Testim® contained manufacturing defects which rendered the subject product unreasonably dangerous;

   b. The subject product's manufacturing defects occurred while the product was in the possession and control of Auxilium;

   c. The subject product was not made in accordance with Auxilium's specifications or performance standards; and

   d. The subject product's manufacturing defects existed before it left the control of Auxilium.

52. The subject product manufactured and/or supplied by Auxilium was defective in construction or composition in that, when it left Auxilium's hands, it deviated in a material way from Auxilium's manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula. In particular, the product is not safe, has numerous and serious side effects, and causes severe and permanent injuries including, but not limited to, developing cardiovascular disease, strokes, and myocardial infarctions.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY – DESIGN DEFECT

53. Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

54. Testim® is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

55. At all times material to this action, Testim® was expected to reach, and did reach, consumers in Pennsylvania, Mississippi and throughout the United States, including Jerry Wilkinson, without substantial change in the condition in which it was sold.

56. At all times material to this action, Testim® was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Auxilium in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

    a. When placed in the stream of commerce, Testim® contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Jerry Wilkinson to risks that exceeded the benefits of the subject product, including, but not limited to, permanent personal injuries including, but not limited to, developing cardiovascular disease, strokes, myocardial infarctions, and other serious injuries and side effects;

    b. When placed in the stream of commerce, Testim® was defective in design and formulation, making the use of Testim® more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other medications and similar drugs on the market to treat low testosterone;

    c. The design defects of Testim® existed before it left the control of Auxilium;

    d. Testim® was insufficiently tested;

    e. Testim® caused harmful side effects that outweighed any potential utility; and

f.  Testim® was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Jerry Wilkinson, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Auxilium liable to Plaintiffs.

57. In addition, at the time the subject product left the control of Auxilium, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Jerry Wilkinson injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk of Jerry Wilkinson injuries without substantially impairing the product's utility.

## THIRD CAUSE OF ACTION
## STRICT LIABILITY – FAILURE TO WARN

58. Plaintiffs incorporate by reference here each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

59. Testim® was defective and unreasonably dangerous when it left the possession of Auxilium in that it contained warnings insufficient to alert consumers, including Jerry Wilkinson, of the dangerous risks and reactions associated with the subject product, including but not limited to its propensity to permanent physical injuries including, but not limited to, developing cardiovascular disease, strokes, myocardial infarcts, and other serious injuries, side effects, and death; notwithstanding Auxilium's knowledge of an increased risk of these injuries and side effects over other forms of treatment for low testosterone.

60. The subject product manufactured and supplied by Auxilium was defective due to inadequate post-marketing warning or instruction because, after Auxilium knew or should have known of the risk of serious bodily harm from the use of the subject product, Auxilium failed to provide an adequate warning to consumers and/or their health care providers of the defects of the product, and/or alternatively failed to conform to federal and/or state requirements for labeling,

warnings and instructions, or recall, while knowing that the product could cause serious injury and/or death.

61. Jerry Wilkinson was prescribed and used the subject product for its intended purpose.

62. Jerry Wilkinson could not have discovered any defect in the subject product through the exercise of reasonable care.

63. Auxilium, as manufacturers and/or distributors of the subject prescription product, is held to the level of knowledge of an expert in the field.

64. Auxilium, the manufacturer and/or distributor of the subject prescription product, is held to a level of knowledge of an expert in the field as the Reference Listed Drug Company and the New Drug Application Holder.

65. The warnings that were given by Auxilium were not accurate, clear, and/or were ambiguous.

66. The warnings that were given by Auxilium failed to properly warn physicians of the increased risks of permanent physical injuries including, but not limited to, developing serious injuries, side effects and death.

67. Jerry Wilkinson, individually and through his prescribing physician, reasonably relied upon the skill, superior knowledge, and judgment of Auxilium.

68. Auxilium had a continuing duty to warn Jerry Wilkinson of the dangers associated with the subject product.

69. Had Jerry Wilkinson received adequate warnings regarding the risks of the subject product, he would not have used it.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

70. Plaintiffs incorporate by reference here each of the allegations set forth in this Complaint

as though fully set forth here.

71. Auxilium expressly represented to Jerry Wilkinson, other consumers, and the medical community that Testim® was safe and fit for its intended purposes, was of merchantable quality, did not produce any dangerous side effects, and had been adequately tested.

72. Testim® does not conform to Auxilium's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries, including, but not limited to, developing cardiovascular disease and other serious injuries and side effects.

73. At the time of the making of the express warranties, Auxilium knew, or in the exercise of reasonable care should have known, of the purpose for which the subject product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose.

74. At the time of the making of the express warranties, Auxilium knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the subject product was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

75. At all relevant times Testim® did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

76. Jerry Wilkinson, other consumers, and the medical community relied upon Auxilium's express warranties.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

77. Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

78. At all relevant times, Auxilium knew of the use for which Testim® was intended and

impliedly warranted the product to be of merchantable quality and safe and fit for such use.

79. Auxilium was aware that consumers, including Plaintiff Jerry Wilkinson, would use Testim® for treatment or prevention of male hypogonadism/ low testosterone.

80. Plaintiff Jerry Wilkinson and the medical community reasonably relied upon the judgment and sensibility of Auxilium to sell Testim® only if it was indeed of merchantable quality and safe and fit for its intended use.

81. Auxilium breached the implied warranty to consumers, including Plaintiff Jerry Wilkinson, as Testim® was not of merchantable quality or safe and fit for its intended use.

82. Consumers, including Plaintiff Jerry Wilkinson and the medical community, reasonably relied upon Auxilium's implied warranty for Testim®.

83. Testim® reached consumers, including Plaintiff Jerry Wilkinson, without substantial change in the condition in which it was manufactured and sold by Auxilium.

84. As a direct and proximate result of Defendant's actions, Jerry Wilkinson suffered a TIA. Plaintiffs, Jerry Wilkinson and Kay Wilkinson have and will sustain significant injuries, damages, and losses, including, but not limited to: medical and related expenses, loss of income and support, and diminished economic horizons. Plaintiffs have also suffered and will continue to suffer other losses and damages, including, but not limited to: diminished capacity for the enjoyment of life, a diminished quality of life, grief, loss of love and affection, nurture, and parental guidance.

## SIXTH CAUSE OF ACTION
## NEGLIGENT MARKETING

85. Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

86. Defendant had a duty to exercise reasonable care in the marketing of Testim®. In

particular, Defendant had a duty to assure that Testim® did not pose an unreasonable risk of bodily harm and adverse events.

87. Defendant failed to exercise reasonable care in the marketing of Testim® in that Defendant knew or should have known that Testim® could cause significant bodily harm or death and was not safe for use by consumers including Plaintiff.

88. Defendant failed to exercise ordinary care in the initial design of Testim®, in the failure to investigate information about the risks Testim® poses, and in its decision to continue to sell Testim® despite those unreasonable risks.

89. At all relevant times, it was foreseeable to Defendant that consumers like Plaintiff would suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

90. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered physical injuries, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT DESIGN

91. Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

92. Defendant had a duty to exercise reasonable care in the design of Testim®. In particular, it had a duty to assure that Testim® did not pose an unreasonable risk of bodily harm and adverse events.

93. Defendant failed to exercise reasonable care in the design of Testim® in that Defendant knew or should have known that Testim® could cause significant bodily harm or death and was not safe for use by consumers, including Plaintiff.

94. At all relevant times, it was foreseeable to Defendant that consumers like Plaintiff would

suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

95. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered physical injuries, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

## EIGHTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

96. From the time Testim® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendant made misrepresentations to Plaintiff Jerry Wilkinson and his family, Plaintiff's physicians, and the general public, including but not limited to the misrepresentation that Testim® was safe, fit, and effective for human consumption. At all times mentioned, Auxilium conducted a sale and marketing campaign to promote the sale of Testim® and willfully deceive Plaintiff Jerry Wilkinson and his family, Plaintiff's physicians, and the general public as to the health risks and consequences of the use of the abovementioned product.

97. Auxilium made the foregoing representations without any reasonable ground for believing them to be true. These representations were made directly by Auxilium, by sales representatives and other authorized agents of Auxilium, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

98. The representations by the Defendant were in fact false, in that Testim® is not safe, fit and effective for human consumption, using Testim® is hazardous to health, and Testim® has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff Jerry Wilkinson.

99. The foregoing representations by Defendant, and each of them, were made with the

intention of inducing reliance and the prescription, purchase and use of Testim®.

100. In reliance of the misrepresentations by Auxilium, and each of them, Plaintiff Jerry Wilkinson was induced to purchase and use Testim®. If Plaintiff Jerry Wilkinson had known of the true facts and the facts concealed by Auxilium, Plaintiff Jerry Wilkinson would not have used Testim®. The reliance of Plaintiff Jerry Wilkinson upon Auxilium's misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

101. As a result of the foregoing negligent misrepresentations by Auxilium Plaintiff Jerry Wilkinson suffered injuries as alleged herein.

<u>**NINTH CAUSE OF ACTION**</u>
<u>**NEGLIGENCE**</u>

102. Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though set forth herein.

103. At all times herein mentioned, Defendant had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of Testim®.

104. At all times herein mentioned, Defendant negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold Testim® and failed to adequately test and warn of the risks and dangers of Testim®.

105. Despite the fact that Defendants knew or should have known that Testim® caused unreasonable, dangerous side effects, Defendants continued to market Testim® to consumers

including Plaintiff, when there were safer alternative methods of treating loss of energy, libido erectile dysfunction, depression, loss of muscle mass and other conditions Testim® marketing materials claim are caused by low testosterone.

106. Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

107. Defendant's negligence was a proximate cause of the Plaintiff's injuries, harm and economic loss which Plaintiff suffered, and will continue to suffer, as described and prayed for herein.

## TENTH CAUSE OF ACTION
## FRAUD

108. Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though full set forth herein.

109. Auxilium, from the time it first tested, studied, researched, evaluated, endorsed, manufactured, marketed, and distributed Testim® until the present, willfully deceived Jerry Wilkinson and his family by concealing from them, Jerry Wilkinson's physicians, and the general public the true facts concerning Testim®, which Auxilium had a duty to disclose.

110. At all times herein mentioned, Auxilium, conducted a sales and marketing campaign to promote the sale of Testim® and willfully deceive Jerry Wilkinson and his family, Plaintiff's physicians, and the general public as to the benefits, health risks and consequences of using Testim®. Auxilium knew of the foregoing, that Testim® is not safe, fit, and effective for human consumption, that using Testim® is hazardous to health, and that Testim® has a serious propensity to cause serious injuries to its users, including but not limited to the injuries Jerry

22

Wilkinson suffered.

111. Auxilium concealed and suppressed the true facts concerning Testim® with the intent to defraud, in that Auxilium knew that Jerry Wilkinson's physicians would not prescribe Testim®, and Jerry Wilkinson would not have used Testim®, if they were aware of the true facts concerning its dangers.

112. As a result of Auxilium's fraudulent and deceitful conduct, Plaintiffs suffered injuries and damages as alleged herein.

## ELEVENTH CAUSE OF ACTION
## LOSS OF CONSORTIUM

113. Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

114. At all times herein mentioned, Plaintiffs Jerry Wilkinson and Kay Wilkinson were husband and wife.

115. As a result of the injuries sustained by Plaintiff Jerry Wilkinson as set forth above, Plaintiff Kay Wilkinson has suffered loss of consortium, including but not limited to, mental anguish and the loss of her husband's support, services, society, companionship, comfort, affection, love and solace.

99. As a result of the injuries sustained by Plaintiff Jerry Wilkinson, as set forth above, Plaintiffs Jerry Wilkinson and Kay Wilkinson sustained damage to their marital relationship.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Jerry Wilkinson and Kay Wilkinson, pray for judgment against the Defendant, Auxilium Pharmaceuticals, Inc., for all elements and items of general and special damages recoverable at law or in equity in amounts which are reasonable in the premises, including but not limited to:

A. General damages in an amount that will conform to proof at time of trial;

B. Special damages in an amount within the jurisdiction of this Court and according to proof at the time of trial;

C. Loss of earnings and impaired earning capacity according to proof at the time of trial;

D. Medical expenses, past and future, according to proof at the time of trial;

E. For past and future mental and emotional distress, according to proof;

F. Damages for loss of care, comfort, society, and companionship in an amount within the jurisdiction of this Court and according to proof;

G. For punitive or exemplary damages;

H. Restitution, disgorgement of profits, and other equitable relief;

I. Injunctive relief;

J. Attorney's fees;

K. For costs of suit incurred herein;

L. For pre-judgment interest as provided by law; and

M. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and as to all issues.


Dated: September 24, 2014

**ANAPOL SCHWARTZ**

Gregory Spizer, Esq.
1710 Spruce Street
Philadelphia, Pennsylvania 19103
Tel.: (215) 735-1130
gspizer@anapolschwartz.com

Eric T. Chaffin, Esq.
Roopal P. Luhana, Esq.
CHAFFIN LUHANA LLP
600 Third Avenue 12th Fl
New York, NY 10016
Telephone: 347-269-4472
Facsimile: 888-499-1123
Chaffin@chaffinluhana.com
Luhana@chaffinluhana.com

*Attorneys for Plaintiff*